# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| JOAO MIGUEL RODRIGUES, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-0139-B |
| | § | |
| KEVIN MCALEENAN, Acting | § | |
| Secretary of Department of Homeland | § | |
| Security, UNITED STATES | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On January 17, 2020, Plaintiff Joao Miguel Rodrigues filed a Motion for Temporary Restraining Order to enjoin the United States Department of Homeland Security, United States Immigrations and Customs Enforcement, from removing him to Angola, his native country, during the week of January 20, 2020. *See* Doc. 3, Mot. for Temporary Restraining Order (TRO), 1. Mr. Rodrigues contends that he has not been provided a full and fair opportunity to state his case for asylum, in accordance with due process of law, and must be provided one before he is ordered removed to Angola. *Id.* Specifically, Mr. Rodrigues contends that he did not have a proper translator at his asylum and immigration judge proceedings, and that 8 C.F.R. § 208.13(c)(4)'s requirement that he must first seek asylum in Mexico to be eligible for asylum in the United States is inapplicable in his case.

# I.

## INTRODUCTION[1]

Mr. Rodrigues was born on March 10, 1997, in Luanda, Angola. Doc. 11, Second Am. Compl., ¶ 32. His father, also Joao Rodrigues, was a member of the CASA-CE, a political party opposed to the ruling MPLA party. *Id.* ¶ 33. CASA-CE's "primary mission . . . is to push for economic reforms within Angola that would help strengthen democracy." *Id.* As a member of the opposition party, Mr. Rodrigues's father was at times tortured and detained. *Id.* ¶ 35. Mr. Rodrigues's father eventually fled the country. *Id.* ¶ 36.

But Mr. Rodrigues stayed in Angola, and on January 1, 2016, he was badly beaten by government police and military officers. *Id.* ¶ 37. Mr. Rodrigues was able to escape before the officers could tie him up. *Id.* This was the last time he has seen any of his family, as he subsequently went into hiding, where he stayed with a minister. *Id.* ¶ 39. After a failed attempt at fleeing the country that resulted in him being detained, on February 26, 2019, the minister was able to sneak Mr. Rodrigues onto a plane that arrived in Brazil. *Id.* ¶¶ 40–41. From there, Mr. Rodrigues went through South and Central America until he reached the Mexico-United States border. *Id.* ¶ 42. It was there where he initially sought, and was refused, asylum. *Id.* ¶ 43. He tried again on September 15, 2019, when he was allowed to enter into credible fear proceedings to determine whether he could file an I-589 Application for Asylum. *Id.* ¶ 44. His credible fear interview took place on October 9, 2019, where he was not represented by counsel, and did not fully understand the translator. *Id.* ¶¶ 46–47.

---

[1]The facts are taken as alleged from Mr. Rodrigues's Second Amended Complaint. *See* Doc. 11, Second Am. Compl.

According to Mr. Rodrigues, the translator was speaking a dialect of Portuguese—Mr. Rodrigues's native language—that is spoken in Brazil, but not Angola. *Id.* ¶ 47. At one point, the interpreter stated that, "I don't think [Mr. Rodrigues] understands Brazilian Portuguese." *Id.* The interpreter further stated that Mr. Rodrigues could not follow the directions he was instructed. *Id.* Despite the interpreter's concerns, Mr. Rodrigues was not provided with another interpreter. *Id.*

Mr. Rodrigues also raises other concerns with the credible fear interview. *See id.* ¶ 48. Specifically, Mr. Rodrigues believes that he was cut off from giving full interviews, and that the officer "chastised Rodrigues." *Id.*

At the end of the interview, the asylum officer found Mr. Rodrigues's testimony that he "feared he would be persecuted if removed to Angola" credible. *Id.* ¶ 49. The officer also found that Mr. Rodrigues was not subject to any bars to asylum or withholding of removal. *Id.* ¶ 50.[2] Yet, the asylum officer denied Mr. Rodrigues's claim, and found that he was subject to a bar to asylum and withholding of removal under 8 C.F.R. § 2018.13(c)(4) (the third-country transit rule), as he traveled through Mexico to the United States' southern border and did not first apply for asylum there. *Id.* ¶ 51.

Mr. Rodrigues appealed this decision to an Immigration Court, where an immigration judge (IJ) heard his case on November 4, 2019. *Id.* ¶ 52. The IJ upheld the asylum officer's decision. *Id.* ¶ 55. Mr. Rodrigues claims that the IJ did not discuss the third-country transit rule's application to Mr. Rodrigues,[3] or how the additional facts Mr. Rodrigues stated at the IJ hearing did not alter the

[2]The complaint refers to what is allegedly the Credible Fear Worksheet the asylum officer filled out in Mr. Rodrigues's case, in which the officer checked the box which states, "Applicant does not appear to be subject to a bars to asylum or withholding of removal." *See id.*

[3]Mr. Rodrigues claims that he was subject to an illegal "metering" policy whereby United States Customs and Border Patrol officials block asylum seekers from crossing the international boundary line and

outcome of his asylum application. *Id.* ¶ 55.

Mr. Rodrigues brings seeks six claims for relief: (1) 8 C.F.R. § 208.13(c)(4) (the third-country transit rule) violates the Due Process Clause of the Fifth Amendment; (2) the third-country transit rule violates the Immigration and Nationality Act (INA) and Administrative Procedures Act (APA); (3) the third-country transit rule violates the APA's notice and opportunity for comment requirements; (4) the third-country transit rule is arbitrary and capricious under the APA; (5) the third-country transit rule was improperly applied to Mr. Rodrigues under an illegal metering policy; and (6) the asylum officer's credibility determination and the IJ's review of that determination were arbitrary and capricious under the APA. Doc. 11, Second Am. Compl., 22–26. Mr. Rodrigues seeks a TRO to prevent the Government from removing him until he receives a proper hearing on his asylum application. *See* Doc. 3, Mot. for TRO.

The Court held a telephonic hearing on January 21, 2020. *See* Doc. 13, Electronic Order. This motion is now ripe for review.

## II.

## LEGAL STANDARD

"Injunctive relief is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (internal quotations and citation omitted). To obtain a TRO, a plaintiff must show: (1) "a substantial likelihood of success on the merits"; (2) "a substantial threat of immediate and irreparable harm, for which he has no adequate remedy at law"; (3) "that greater injury will result

---

instead force them to travel to Mexico to place their names on a "list." Doc. 11, Second Am. Compl., ¶ 60.

from denying the temporary restraining order than from its being granted"; and (4) "that a temporary restraining order will not disserve the public interest." *Dearmore v. City of Garland*, 2005 WL 1630156, at *1 (N.D. Tex. June 28, 2005) (citing, *inter alia*, *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)).

## III.

## ANALYSIS

Before the Court can proceed to the merits of Mr. Rodrigues's claims, the Court must determine whether it has a jurisdictional basis to proceed in this case. "As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit." *Sawyer v. Wright*, 471 F. App'x 260, 260 (5th Cir. 2012) (per curiam). Thus, if the Court does not have subject-matter jurisdiction over the dispute and has to dismiss, the party seeking the TRO is not likely to win on the merits of his or her claims. Moreover, "[t]he party seeking relief bears the burden of establishing subject-matter jurisdiction." *Id.* (citing *United States v. Hays*, 515 U.S. 737, 743 (1995)).

The Government argues that this Court lacks subject-matter jurisdiction under 8 U.S.C. § 1252(e). Doc. 9, Gov't's Resp., 8. This Court agrees with the Government, and concludes that it does not have jurisdiction over Mr. Rodrigues's causes of action. Therefore, the Court **DENIES** Mr. Rodrigues's Motion for Temporary Restraining Order (Doc. 3).

A.    *8 U.S.C. § 1252 Strips the Court of Jurisdiction to Hear Mr. Rodrigues's Claims.*

Mr. Rodrigues was issued an order of expedited removal under 8 U.S.C. § 1225(b)(1). *See* Doc. 11, Second Am. Compl., ¶¶ 26–27, 44–45; Doc. 9, Gov't's Resp., 1. The appropriate court of appeals is "the sole and exclusive means of judicial review of an order of removal entered or issued

under any provision of this chapter, except as provided in subsection (e)." 8 U.S.C. § 1252(a)(5).

And subsection (e) outlines the scope of judicial review allowed for expedited removal orders, which

is the type of order at issue here. *See* § 1252(e). Section 1252(e) reads, in relevant part:

> (2) Habeas corpus proceedings. Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of—
>
>> (A) whether the petitioner is an alien,
>>
>> (B) whether the petitioner was ordered removed under such section, and
>>
>> (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

8 U.S.C. § 1252(e)(2). The Government believes that this statute divests the Court of jurisdiction

to hear Mr. Rodrigues's claims, and that the TRO should therefore be denied. Doc. 9, Gov't's Resp.,

8. Mr. Rodrigues contends that in light of the combination of issues in his case, his case is one of first

impression. Doc. 12, Pl.'s Mot. for Hearing, 2. Mr. Rodrigues cites to two district court cases from

California which have held that the third-country transit rule violates the APA. *Id.* These two cases

are: *East Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922 (N.D. Cal. 2019), *order reinstated*, 391

F. Supp. 3d 974 (N.D. Cal. 2019), and *Al Otro Lado, et al. v. McAleenan*, 2019 WL 6134601 (S.D.

Cal. Nov. 19, 2019).

However, although these cases might help Mr. Rodrigues if this Court were to get to the

merits of his claims, they do not demonstrate how this Court has jurisdiction over any of his claims.

But neither of these cases were a result of challenges to an expedited order of removal under 8 U.S.C.

§ 1225(b)(1). *See East Bay*, 385 F. Supp. 3d at 922; *Al Otro Lado*, 2019 WL 6134601, at *1.

Therefore, there was a different jurisdictional basis for those lawsuits to be heard in federal district court. Here, this Court must find its jurisdiction under 8 U.S.C. § 1252(e)(2), which dictates a district court's jurisdiction for orders of expedited removal. *See* § 1252(e)(2).

The Court holds that § 1252(e)(2) denies the Court jurisdiction over all of Mr. Rodrigues's claims. The Fifth Circuit in *Brumme v. I.N.S.* concluded that "the language of § 1252(e)(2) clearly operates, at the very least, to *limit* the scope of review in a habeas proceeding involving determinations made under § 1225(b)(1)." 275 F.3d 443, 448 (5th Cir. 2001). "[T]he statute *could not be much clearer* in its intent to restrict habeas review." *Id.* (quoting *Li v. Eddy*, 259 F.3d 1132, 1134–35 (9th Cir. 2001)) (emphasis in *Li*).

Thus, this Court's jurisdiction over expedited removal orders is limited; if Mr. Rodrigues "does not raise one of the grounds for review permitted by § 1252(e)(2), the Court has no jurisdiction to consider his claims." *Shah v. Dir., Jackson Par. Corr. Ctr.*, 2019 WL 4254139, at *2 (W.D. La. Sept. 6, 2019). In *Shah*, the district court found no jurisdiction under § 1225(e)(2) for a plaintiff's claim, similar to the one here, that alleged procedural due process violations to the expedited removal procedures used in his case. *See id.*

Mr. Rodrigues is challenging the constitutionality and legality of 8 C.F.R. § 208.13(c)(4), the procedures used in his asylum hearings, and the determinations made by the aslyum officer and IJ. *See* Doc. 11, Am. Compl., 22–26. Although Mr. Rodrigues contends that he "is not seeking to have this Court declare that he is entitled to asylum or grant him legal status in the United States," *see id.* at 29–30, his grounds for the TRO are "grounds for review" not allowed by § 1252(e)(2). *Shah*, 2019 WL 4254139, at *2. Thus, "the Court has no jurisdiction to hear his claims." *Id.*; *see also Morales-Batres v. Bennet*, 2018 WL 1733379, at *2 (S.D. Tex. Mar. 1, 2018), *report and*

*recommendation adopted* 2018 WL 1730311 (S.D. Tex. Apr. 10, 2018) (explaining how in the contet of an expedited order of removal, "the Court's inquiry is limited to the three matters enumerated in § 1252(e)(2)(A)–(C)").

Because § 1252(a)(2)(A) strips courts of jurisdiction to review claims relating to the expedited removal statute except as provided in § 1252(e), "[n]otwithstanding any other provision of law (statutory or nonstatutory)," the APA, INA, and 28 U.S.C. § 1331 (the federal question jurisdiction statute) cannot be an alternative basis for jurisdiction here. *See Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (explaining that a statute's jurisdiction-stripping applied to "the general grant of federal question jurisdiction, 28 U.S.C. § 1331" when the statute "applie[d] '[n]otwithstanding any other provision of law'"). And as to the APA specifically, the APA grants private rights of action, except when other "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). Thus, 8 U.S.C. § 1252(e)(2) "preclude[s] judicial review" of Mr. Rodrigues's APA claims. *See Shah*, 2019 WL 4254139, at *3. Additionally, because these statutes do not provide a basis for jurisdiction in this case, neither does the Declaratory Judgment Act. *See Rogers v. Ingolia*, 424 F. App'x 283, 288 (5th Cir. 2011) (per curiam) ("[T]he Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present.") (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 767 (5th Cir. 2011)).

Accordingly, because the Court concludes that it does not have jurisdiction over Mr. Rodrigues's claims or requested relief under 8 U.S.C. § 1252(e)(2), the Court **DENIES** Mr. Rodrigues's Motion for TRO.

B.  *There Are Two Additional Reasons Why This Court Cannot Review Mr. Rodrigues's Facial Challenges to the Third-Country Transit Rule in his Second, Third, Fourth, and Sixth claims for relief.*

1.  <u>The Supreme Court has stayed the nationwide injunction on the third-country transit rule at issue in this case.</u>

In *Barr v. East Bay Sanctuary Covenant*, the Supreme Court stayed the nationwide injunction on the third-country transit rule "in full pending disposition" of the case in the Supreme Court. *See* 130 S. Ct. 3 (2019) (Mem.). The Supreme Court has not handed down its decision in that case as of today.

In light of this stay allowing the rule to go into full effect at least temporarily, the Court would find it, at the very least, inappropriate for it consider the legality or constitutionality of the rule at this time.

2.  <u>8 U.S.C. § 1252(e)(3) requires such facial challenges to be made in the United States District Court for the District of Columbia.</u>

8 U.S.C. § 1252(e)(3)(A) reads, in full:

(3) Challenges on validity of the system [of expedited removal]

(A) In general[.] Judicial review of determinations made under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such regulation, or a written policy directive, written policy guideline, or written procedure by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A). Additionally, such actions must be "filed no later than 30 days after the date of issuance of such order." *Id.* § 1252(e)(3)(B). By the plain language of the statute, then, any

challenge to the legality or constitutionality of any regulation implementing the expedited removal procedures of § 1225(b) must be made in the District Court for the District of Columbia.

Courts are in accord with this interpretation. For example, in *Thuraissigiam v. U.S. Department of Homeland Security*, the Ninth Circuit held that the Suspension Clause of the United States Constitution[4] requires courts to retain jurisdiction over as-applied challenges to the procedures leading to an expedited order of removal. 917 F.3d 1097, 1119 (9th Cir. 2019). However, the Ninth Circuit also noted how under 8 U.S.C. § 1252(e)(3), facial challenges to the expedited removal process, including "regulations implementing those provisions," had to be brought "only in the District of Columbia." *Id.* at 1119 n.3.

Therefore, to the extent that Mr. Rodrigues asks this Court to declare the third-country transit rule unconstitutional or illegal as a general matter under the APA, INA, and/or the United States Constitution, only the District Court for the District of Columbia has the jurisdiction to do so.

C.      *The Suspension Clause Does Not Require the Court to Review Mr. Rodrigues's As-Applied Challenges to the Procedures Used, and the Conclusions of, His Expedited Order of Removal.*

Mr. Rodrigues, both during the hearing and in his Second Amended Complaint and Motion for Hearing, tangentially raised the issue of whether the Suspension Clause requires this Court to retain more jurisdiction that it is given under § 1252(e)(2). *See* Doc. 11, Second Am. Compl., ¶ 12 (stating that the Court has jurisdiction under the Suspension Clause); Doc. 12, Mot. for Hearing, 2–3 (discussing *Thuraissigiam*). The Supreme Court has granted certiorari in *Thuraissigiam*. *See Dep't of Homeland Security v. Thuraissigiam*, 140 S.Ct. 427 (2019) (Mem.).

---

[4]This will be discussed more below.

The Suspension Clause requires that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. "The Clause 'mandates some judicial intervention in deportation cases.'" *Diaz Rodriguez v. U.S. Customs and Border Protection*, 2014 WL 4675182, at *3 (W.D. La. Sept. 18, 2014), *vacated as moot*, *Diaz-Rodriguez v. Holder*, 2014 WL 10965184, at *1 (5th Cir. Dec. 16, 2014) (per curiam) (quoting *INS v. St. Cyr*, 533 U.S. 289, 300 (2001)). The Court must analyze whether "the statute stripping jurisdiction to issue the writ avoids the Suspension Clause mandate because Congress has provided adequate substitute procedures for habeas corpus." *Boumediene v. Bush*, 533 U.S. 723, 771 (2008).

Although *Thuraissigiam* is on appeal in the Supreme Court, this Court notes that two district courts in the Fifth Circuit have rejected the Suspension Clause argument as to as-applied challenges of expedited orders of removal. *See Diaz Rodriguez*, 2014 WL 4675182, at *4 ("[T]he legislatively imposed limitation on review of his expedited removal order in his particular case does not run afoul of the Suspension Clause."); *Shah*, 2019 WL 4254139, at *3 (rejecting a Suspension Clause argument in the same context). Additionally, the Fifth Circuit in *Brumme* suggested that 8 U.S.C. § 1252(e)(2) does not run afoul of the Suspension Clause. *See Brumme*, 275 F.3d at 448 ("In sum, §§ 1252(e)(2) and (5) are sufficient to satisfy the plain statement rule concerning habeas restrictions . . . [T]he language of § 1252(e)(2) clearly operates, at the very least, to *limit* the scope of review in a habeas proceeding involving determinations made under § 1225(b)(1).").

In light of these cases, and that Mr. Rodrigues only tangentially brought a Suspension Clause argument, this Court finds that its lack of jurisdiction over Mr. Rodrigues's as-applied challenges to the procedures he received when denied asylum does not violate the Suspension Clause.

## IV.

## CONCLUSION

For the foregoing reasons, the Court concludes that it does not have jurisdiction to hear Mr. Rodrigues's facial and as-applied challenges to his expedited order of removal. The Court acknowledges and understands the harsh reality that follows from this fact.. However, the Court **DENIES** Mr. Rodrigues's Motion for TRO (Doc. 3).

**SO ORDERED**.

**SIGNED: January 22, 2020.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE