UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOAO MIGUEL RODRIGUES, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-0139-B |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al., | § § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

On January 17, 2020, Plaintiff Joao Miguel Rodrigues filed a Complaint (Doc. 2), as well as a Motion for Temporary Restraining Order (TRO) (Doc. 3) to enjoin the United States Department of Homeland Security, United States Immigrations and Customs Enforcement, from removing him to Angola, his native country, during the week of January 20, 2020. On January 22, 2020, the Court denied Mr. Rodrigues's Motion for TRO, based on the Court's lack of subject-matter jurisdiction over his claims. Doc. 15, Mem. Op. & Order, 12. Because the Court finds that it still does not have subject-matter jurisdiction over Mr. Rodrigues's claims, the Court **DISMISSES** the Complaint.

## I.

## INTRODUCTION

*A.  Factual Background*

The Court hereby incorporates the facts discussed in its previous order denying Mr. Rodrigues's Motion for TRO. *See* Doc. 15, Mem. Op. & Order, 2–4.

*B.     Procedural Background*

Mr. Rodrigues brings six claims for relief: (1) 8 C.F.R. § 208.13(c)(4) (the third-country transit rule) violates the Due Process Clause of the Fifth Amendment; (2) the third-country transit rule violates the Immigration and Nationality Act (INA) and Administrative Procedure Act (APA); (3) the third-country transit rule violates the APA's notice and opportunity-for-comment requirements; (4) the third-country transit rule is arbitrary and capricious under the APA; (5) the third-country transit rule was improperly applied to Mr. Rodrigues under an illegal metering policy; and (6) the asylum officer's credibility determination and the Immigration Judge's review of that determination were arbitrary and capricious under the APA. Doc. 11, Second Am. Compl., 22–28.

On January 22, 2020, the Court denied Mr. Rodrigues's Motion for TRO. Doc. 15, Mem. Op. & Order, 12. The Court concluded that because it lacked subject-matter jurisdiction over Mr. Rodrigues's claims, Mr. Rodrigues was not likely to succeed on the merits of his case. *Id.* Specifically, the Court found that 8 U.S.C. § 1252 stripped the Court of subject-matter jurisdiction to hear Mr. Rodrigues's claims. *Id.* at 5–8. Additionally, the Court found that the Supreme Court's stay of the nationwide injunction on the third-country transit rule at issue in this case made it "inappropriate for [the Court] to consider the legality or constitutionality of the rule at this time." *Id.* at 9. Moreover, the Court went on to explain that 8 U.S.C. § 1252(e)(3) requires that facial challenges to the third-country transit rule be brought in the District Court for the District of Columbia. *Id.* at 9–10.

After denying Mr. Rodrigues's Motion for TRO, the Court then issued a Show-Cause Order to Mr. Rodrigues to demonstrate why the whole case should not be dismissed for lack of subject-matter jurisdiction. Doc. 16, Electronic Order. All parties filed timely responses to the Show Cause

Order, and the issue is now ripe for review.

## II.

## LEGAL STANDARD

"As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit." *Sawyer v. Wright*, 471 F. App'x 260, 260 (5th Cir. 2012) (per curiam). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation and quotations omitted). Moreover, "[t]he party seeking relief bears the burden of establishing subject-matter jurisdiction." *Sawyer*, 471 F. App'x at 260 (citing *United States v. Hays*, 515 U.S. 737, 743 (1995)).

## III.

## ANALYSIS

In Mr. Rodrigues's response to the Show-Cause Order, he argues that the third-country transit rule is an asylum, rather than an expedited removal, regulation. Doc. 19, Pl.'s Resp., 5. Thus, he argues, if the Government could apply the third-country transit rule to the expedited removal statute, the Government would "render the statutory protections found in the expedited removal statutes completely meaningless." *Id.* Mr. Rodrigues argues that "[s]urely it is not the case that Congress intended § 1252(e) to leave asylum seekers without any of the protections it explicitly provided in 8 U.S.C. § 1225(b)(1)," the expedited removal statute. *Id.* at 14. To Mr. Rodrigues, "[t]his is an absurd result that surely cannot be tolerated." *Id.*

However, this argument fails for several reasons. For one, Mr. Rodrigues's argument is premised on the idea that the third-country transit rule is invalid if applied to the expedited removal

statute. As the Court has already stated, such systemic challenges to the validity of any regulation implementing the expedited removal statute must be brought in the District Court for the District of Columbia. Doc. 14, Mem. Op. & Order, 9–10. Mr. Rodrigues believes that this jurisdictional limitation for where such a suit may be filed—found in 8 U.S.C. § 1252(e)(3)—was not intended for the District Court for the District of Columbia "to have exclusive jurisdiction over other matters or regulations simply because expedited removal is involved." Doc. 19, Pl.'s Resp., 15. To support his interpretation, Mr. Rodrigues points to the fact that the third-country transit rule is being challenged in courts not within the District of Columbia. *Id.* However, as this Court noted in its first order, these cases did not originate as "challenges to an expedited order of removal under 8 U.S.C. § 1225(b)(1)." Doc. 14, Mem. Op. & Order, 6.

Mr. Rodrigues explains that his "argument is a simple one: the [third-country transit rule], if applied to arriving aliens subject to expedited removal at a southern border, renders all of the statutory provisions and protections found in § 1225(b)(1) meaningless." Doc. 19, Pl.'s Resp., 12. This shows the flaw in Mr. Rodrigues's arguments: he is either challenging the validity of a regulation implementing the expedited removal system, or he is challenging the third-country transit rule as applied to his specific order of removal. That much is apparent from his six claims for relief. *See* Doc. 11, Second Am. Compl., 22–28 (listing the six causes of action). Thus, "the fact remains that at bottom, each of the plaintiff's claims asks this [C]ourt to engage in judicial review of the determination made under section 1225(b)(1) that [Mr. Rodrigues] is subject to expedited removal." *Nianga v. Wolfe*, 2020 WL 415927, at *4 (N.D. Tex. Jan. 27, 2020) (citation and quotations omitted) (alterations incorporated). And besides the three enumerated ways in which a district court may review an expedited removal order, see 8 U.S.C. § 1252(e)(2), "the [C]ourt cannot" review

expedited orders of removal. *Nianga*, 2020 WL 415927, at *4.

The Court will not repeat the other reasons that it lacks subject-matter jurisdiction in this case, except to note a few points. First, it is Mr. Rodrigues's understanding that "the Court denied his request for an injunction [on his APA] claims based on the Supreme Court staying the injunction in the *E. Bay Sanctuary Covenant v. Barr* litigation." Doc. 19, Pl.'s Resp., 3. He "does not believe that this is a basis for finding the Court lacks jurisdiction over these claims" once past the TRO stage. *Id.* The Court notes, however, that it had additional reasons for concluding that it lacked jurisdiction over those claims. In the section in which it discussed the stay in *E.Bay*, the Court explained that the stay was an "additional reason[]" why the Court could not assert jurisdiction at that time. Doc. 15, Mem. Op. & Order, 9. Other reasons included: (1) 8 U.S.C. § 1252 strips the Court of jurisdiction to hear all of Mr. Rodrigues's claims; and (2) facial challenges to expedited removal procedures must be brought in the District Court for the District of Columbia. *Id.* 5, 9–10. Those reasons still apply.

Next, Mr. Rodrigues cites various cases, which are currently at various stages of litigation, that involve challenging the validity of the third-country transit rule. *See e.g.*, Doc. 19, Pl.'s Resp., 3 (arguing that "the litigation over the [third-country transit rule] in the *E.Bay Sanctuary Covenant v. Barr* case demonstrates that these claims are not controlled by the jurisdictional bars in 8 U.S.C. § 1252(e).") But as this Court has explained both above and in its first order, such cases did not involve challenges to expedited orders of removal under 8 U.S.C. § 1225(b)(1) and thus "there was a different jurisdictional basis for those lawsuits to be heard in federal district court." Doc. 15, Mem. Op. & Order, 6–7. This is why Mr. Rodrigues's contention—that the very nature of those lawsuits demonstrates that the third-country transit rule is not an expedited removal regulation— fails. Here,

"this Court must find its jurisdiction under 8 U.S.C. § 1252(e)(2), which dictates a district court's jurisdiction for orders of expedited removal." *Id.* at 7 (citation omitted).

And for Mr. Rodrigues's claims, the Court does not have such jurisdiction. Mr. Rodrigues's central argument—that the Court's interpretation of the jurisdictional-stripping nature of 8 U.S.C. § 1252(e) would render the protections found in the expedited removal statute meaningless—does not require a different result. Stripping courts of judicial review of statutory protections is exactly what jurisdiction-stripping statutes do. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 576–577 (2006) (explaining how "jurisdiction-stripping statute[s] usually 'take[] away no substantive right but simply change[s] the tribunal that is to hear the case'") (quoting *Hallowell v. Commons*, 239 U.S. 506, 508 (1916)). Because, as noted in the Court's first order, Mr. Rodrigues does not develop a Suspension Clause argument as to whether there is another adequate tribunal,[1] the Court will not consider such an argument here. *See* Doc. 15, Mem. Op. & Order, 10–11.

## IV.

### CONCLUSION

The Court repeats what it has already stated: it acknowledges that the Court's lack of subject-matter jurisdiction is a harsh reality. However, the Court does not have subject-matter jurisdiction over this case and thus **DISMISSES** Mr. Rodrigues's complaint.

---

[1] The Suspension Clause requires that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.

SO ORDERED.

SIGNED: February 18, 2020.

                                                                     JANE J. BOYLE
                                                                     UNITED STATES DISTRICT JUDGE